[No. 13016.   Department One.   March 7, 1916.]

FRED W. OLSEN, *Respondent*, v. CHARLES W. OLSEN, *Appellant*.[1]

WORK AND LABOR—IMPLIED CONTRACT—SUPPORT OF PARENT. A son cannot recover of his father for the board and keep of his mother, as upon an implied contract, where it appears that, to benefit her health, he took her from a sanitarium and brought her to his home on the coast without the knowledge of his father, no justification therefor and no breach of legal duty by the father being shown; since the presumption is that a parent is domiciled with a child by invitation, such suits are not favored, and the son was a volunteer and trespasser and cannot claim compensation for his wrong.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 7, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Beechler & Batchelor*, for appellant.

*Curtis J. Beedle*, for respondent.

[1]Reported in 155 Pac. 747.

CHADWICK, J.—Charles W. Olsen and his wife, Leonore, are residents of the state of Illinois. Mrs. Olsen was sick in the spring of 1912 and, upon the advice of the attending physician, went to a sanitarium for treatment. Respondent was, at that time, a resident of Seattle. He was in Illinois at the time, presumably in attendance upon his mother. Conceiving that it would be beneficial to take his mother away, he did so without saying anything to appellant, and without his knowledge. He first intended to take her to Evanston to an aunt. He expected to work in Chicago for a month or two, and then take his mother and sister, who was with her, home. Within a month he brought his mother to Seattle, where, so far as the record shows, she still is.

Respondent justifies his act by alleging and testifying that his mother's health was such that it was necessary to bring her to the coast; that the doctor advised the change that her life might be saved. In this, he is not sustained, either by his own testimony, when considered as a whole, or by the testimony of others. Indeed, he is contradicted by his conduct, as well as by a letter which he addressed to the attending physician from Evanston, in which he says:

"My dear Doctor:

"You doubtless were very much surprised when you learned that I had taken my mother north. Of course I know that had you been cognizant of what I was going to do, you would hardly have approved of my doing so at the time I did, but circumstances were such that I myself had to leave and I concluded at the last minute to take Mama along. . . . I am going to work in Chicago for a couple months and am intending to keep Mama and Agnes at least until April first. . . . I suppose my father feels a little offended at me but he is a good fellow anyway, and will realize that I was acting only for Mama's good. . . . Sincerely,
                                                "Fred W. Olsen."

This action was brought to recover for the "board and keep" of the mother after respondent brought her to Seattle. The case was tried by a jury. A judgment on the verdict

in the sum of $450 was entered in respondent's favor.   It is admitted that there is no express contract to pay the charge made.   The court instructed the jury:

"An implied contract is one that the law infers from facts and circumstances.   If the plaintiff furnished necessaries to his mother and under such circumstances as established an understanding between the plaintiff and the defendant that the plaintiff should furnish the same and that the defendant should pay for the same, then the law would imply a contract to pay."

The court then proceeded to tell the jury, in a negative way, that if there was a reasonable danger or probability that a further residence at the domicile of her husband would jeopardize the health of his mother, respondent would be justified in taking her away, and entitled to recovery upon an implied contract.   Granting this to be the law, but without so holding, there is nothing in the testimony to sustain the verdict.   It is not shown that appellant was unmindful of his wife's health and welfare, or that he had refused to dispose of her as advised by his physician, or, if it were necessary to bring her to this coast (a fact not proven, and an intent not formed until after respondent had taken her to Evanston), that appellant was either unable or unwilling to do so.

Because of the great abuses arising in such cases as this, the law, in its development, has evolved a strong presumption that may not be overcome except by evidence having some degree of certainty.   Many cases hold that nothing short of an express contract will avail.   But there is no word, act, or deed of appellant upon which the law can predicate an implied contract.   Suits by a child against a parent for support are not favored.   The presumption is that a parent who is domiciled in the home of a child is there by invitation (an admitted fact in this case), and that the service rendered is prompted by the better instincts of love

and filial duty. *Miller's Appeal,* 100 Pa. St. 568, 45 Am. Rep. 394; 29 Cyc. 1620.

If one having an opportunity to make an express contract fails to parley with the one who has an interest, and wrongfully takes the subject-matter into his own hands to deal with in his own way, he should not be heard at a bar of justice to assert an implied contract. Contracts are grounded in duties and rights, not in derelictions and wrongs. Respondent avoided the duty that was upon him to contract with appellant when he purposed to invade his right to select the domicile of his wife. He was a volunteer and a trespasser. He assumed a burden that he cannot put down.

The law protects contracts that are made. It holds parties to implied promises where it is clear that there has been a breach of legal duty. It has never, so far as we know, permitted a trespasser upon the rights of another to claim compensation for his wrong under the coercive persuasion of an implied contract.

There being neither fact nor law to sustain the verdict, the judgment is reversed with instructions to dismiss the complaint.

MORRIS, C. J., MOUNT, and ELLIS, JJ., concur.